Citation Nr: 1438755 
Decision Date: 08/29/14 Archive Date: 09/03/14

DOCKET NO. 12-06 913 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Muskogee, Oklahoma


THE ISSUES

1. Entitlement to service connection for bilateral eye disabilities, to include as due to exposure to Agent Orange.

2. Entitlement to service connection for degenerative arthritis of the thoracolumbar spine, to include as due to exposure to Agent Orange.

3. Entitlement to service connection for a right hip disability, to include as due to exposure to Agent Orange.

4. Entitlement to service connection for a left hip disability, to include as due to exposure to Agent Orange.

5. Entitlement to service connection for a left leg disability, to include as due to exposure to Agent Orange.



REPRESENTATION

Veteran represented by: Veterans of Foreign Wars of the United States


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Nicole L. Northcutt, Counsel


INTRODUCTION

The Veteran served on active duty from April 1966 to March 1972, which included approximately two years of service in the Republic of Vietnam.

This matter is before the Board of Veterans' Appeals (Board) on appeal of a rating decision issued in April 2011 by the Department of Veterans Affairs (VA) Regional Office (RO) in Muskogee, Oklahoma.

In June 2014, the Veteran appeared at a hearing before the undersigned Veterans Law Judge.

The issue of entitlement to service connection for bilateral eye disabilities is addressed in the REMAND portion of the decision below and is REMANDED to the agency of original jurisdiction (AOJ).



FINDINGS OF FACT

1. Spinal, hip or left leg disabilities are not among the list of disabilities for which service connection may be granted based solely on presumed herbicide-exposure during service.

2. The Veteran developed arthritis of his thoracolumbar spine and bilateral hips many years after service.

3. There is no probative evidence suggesting a relationship between the Veteran's spinal or hip disabilities, or any possible left leg disability, and service or his presumed in-service herbicide exposure.


CONCLUSIONS OF LAW

1. The criteria for service connection for degenerative arthritis of thoracolumbar spinal have not been met. 38 U.S.C.A. §§ 1110, 1116, 5107 (West 2002 & Supp. 2013), 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2013).

2. The criteria for service connection for a right hip disability have not been met. 38 U.S.C.A. §§ 1110, 1116, 5107 (West 2002 & Supp. 2013), 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2013).

3. The criteria for service connection for a left hip disability have not been met. 38 U.S.C.A. §§ 1110, 1116, 5107 (West 2002 & Supp. 2013), 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2013).

4. The criteria for service connection for a left leg disability have not been met. 38 U.S.C.A. §§ 1110, 1116, 5107 (West 2002 & Supp. 2013), 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2013).



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA's Duties to Notify and Assist

Upon receipt of a complete or substantially complete application, VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5103(a), 5103A (West 2002 & Supp. 2013); 38 C.F.R. § 3.159 (2013). VA must notify the claimant of the information and evidence not of record that is necessary to substantiate a claim, which information and evidence VA will obtain, and which information and evidence the claimant is expected to provide. 

A June 2010 letter satisfied the duty to notify provisions, including notification to the Veteran of regulations pertinent to the establishment of an effective date and of the disability rating. Thus, VA's duty to notify has been met.

With regard to VA's duty to assist, the Veteran offered testimony relevant to his claims in a Board hearing, and his service treatment records, VA medical treatment records, and private treatment records have been obtained. The Veteran has not indicated, and the record does not contain evidence, that he is in receipt of disability benefits from the Social Security Administration.

While some of the records provided by one of the Veteran's private physicians are only partially legible, given the deficient quality of the copies, the records do not suggest, and the Veteran does not posit, that any illegible portion of these records would contain medical evidence linking his claimed disabilities to service. Indeed, during his Board hearing, the Veteran testified that none of his treatment providers had agreed to author a medical opinion linking his disabilities, which manifested and were treated many years after service, to service despite his requests to his treatment providers that they render such opinions. Accordingly, the Board finds that the claims need not be remanded to obtain more legible copies of these treatment records. 

A VA examination was conducted in April 2011; the record does not reflect that this examination is inadequate for deciding the four musculoskeletal claims, as the examination report reflects that the VA examiners performed thorough clinical evaluations of the Veteran and conducted relevant diagnostic testing. Medical opinions regarding the etiology of the Veteran's spinal, hip, and leg disabilities were not obtained because the record failed to reflect any probative evidence suggesting a relationship between these disabilities and service; therefore, a duty to obtain related medical opinions was not triggered. See McLendon v. Nicholson, 20 Vet. App. 79 (2006). Although the Board is remanding the bilateral eye disabilities claim, unlike these four claims, an in-service injury, event or disease is established for that claim.

There is no indication in the record that any additional evidence, relevant to the issues decided, is available and not part of the claims file. As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of the case, the Board finds that any such failure is harmless. 

Evidence

With regard to Veteran's claimed spinal and hip disabilities, the Veteran's service treatment records do not reflect any spinal or hip treatment. Moreover, on separation from service, the Veteran's spine and lower extremities were assessed as normal, and the Veteran denied a history of arthritis, rheumatism, or bursitis; bone, joint, or other deformity; lameness; or recurrent back pain.

A reservist enlistment examination performed in April 1982 assessed the Veteran's spine and lower extremities as normal, and the Veteran again denied the orthopedic impairments outlined above.

A July 2009 magnetic resonance imaging (MRI) study of the lumbar spine revealed multi-level degenerative changes, and November 2009 x-rays of the Veteran's hips revealed bilateral hip degenerative changes.

The Veteran underwent a VA examination in April 2011 that included an assessment of his back and hips. During the examination, the Veteran reported that his spinal and hip disabilities began five years prior to the time of the examination. After conducting physical examinations of the Veteran's spine and hips and reviewing x-rays taken in conjunction with the examination, the examiner diagnosed the Veteran with degenerative arthritis of the thoracolumbar spine and right hip. No diagnosis was rendered for the Veteran's left hip, as x-rays were interpreted to reveal no degenerative changes. The examiner did not provide a medical opinion regarding the etiology of these disabilities, and as discussed above, a medical opinion was not warranted.

With regard to the Veteran's claimed left leg disability, the Veteran did not receive any left leg treatment during service, and there is no diagnosis of a left leg impairment of record.

Analysis

The Veteran does not assert, and the evidence does not suggest, that his currently-diagnosed spinal or hip disabilities had their onset in service. In that regard, the Veteran did not seek treatment for or report symptoms of these disabilities during service, and he reports the onset of these disabilities many years after service. See Maxson v. West, 12 Vet. App. 453 (1999), aff'd 230 F.3d 1330 (Fed. Cir. 2000). 

Moreover, the Veteran does not assert, and the record does not suggest, that degenerative joint disease of the spine or hips manifested to a compensable degree within one year of service, as examinations of the Veteran's spine and lower extremities performed in 1982 revealed no related abnormalities. Therefore, service connection is not warranted pursuant to the provisions awarding presumptive service connection for certain chronic diseases, including forms of arthritis. See 38 U.S.C.A. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309(a).

Likewise, as bone conditions have been specifically excluded as diseases subject to presumptive service connection based on presumed in-service herbicide exposure, service connection for these orthopedic disabilities may not be presumptively awarded on this basis, as well. See 38 U.S.C.A. § 1116; 38 C.F.R. §§ 3.307, 3.309. While Veteran asserts that these disabilities are related to his exposure to Agent Orange during service, as he has no familial history of these disabilities, the Veteran is not competent to make such a causal connection, and he has not submitted any competent medical evidence in support of this theory of service connection. The evidence does not even show that these disabilities may be related to Agent Orange exposure.

With regard to the Veteran's claimed left leg disability, although the record contains the Veteran's lay statements of experiencing left leg pain, the record does not currently reflect any clinically diagnosed disability of the left leg. Even if a left leg disability were shown, the claim would fail for the same reason as the spinal and hip disability claims. As an aside, the Board notes that to the extent the Veteran's report of a left leg disability refers to radicular symptoms stemming from his degenerative spinal disability, as the Veteran's spinal disability is not service-connected, service connection is not warranted for any neurological manifestation of that disability.

The Board expresses its sympathy for the Veteran based on his numerous health problems and commends his representative's zealous advocacy; however, as there is no legal basis upon which to grant the benefits sought, service connection is not warranted.

In sum, the preponderance of the evidence is against these four claims for service connection; there is no doubt to be resolved; and service connection for degenerative arthritis of the spine, bilateral hip disabilities, and a left leg disability is not warranted.


ORDER

Service connection for degenerative arthritis of the thoracolumbar spine is denied.

Service connection for a right hip disability is denied.

Service connection for a left hip disability is denied.

Service connection for left leg disability is denied.


REMAND

With regard to the Veteran's service connection claim for bilateral eye disabilities, his service treatment records reflect an assessment of conjunctivitis in March 1970, and his recent VA ophthalmological treatment records reflect assessments of allergic conjunctivitis in 2012 and 2013. Given this evidence of in-service treatment for a currently-diagnosed bilateral eye disability, a related medical opinion must be obtained. While a VA medical opinion addressing the etiology of the Veteran's bilateral eye disabilities was rendered in 2010, the opinion did not consider the Veteran's current eye disability of conjunctivitis, presumably because such a diagnosis was not then of record.

Accordingly, this issue is REMANDED for the following actions:

1. Schedule the Veteran for a VA eye examination by an appropriate medical professional. The entire claims file, to include all electronic files, must be reviewed by the examiner. 

After eliciting a history of the Veteran's bilateral eye disabilities from the Veteran, and conducting a relevant examination, the examiner is to provide an opinion as to whether it is at least as likely as not (a 50 percent or greater probability) that any currently-diagnosed eye disability, to include right eye blindness/retinal detachment, bilateral glaucoma, and conjunctivitis (all of which have been diagnosed during this appeal), is related to his active service, to include his treatment for conjunctivitis in March 1970.

The examination report must include a complete rationale for all opinions expressed.

2. Then, readjudicate the issue remaining on appeal. If the benefit sought remains denied, issue a supplemental statement of the case and return the case to the Board. 

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2013).



____________________________________________
RYAN T. KESSEL
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs