﻿Citation Nr: AXXXXXXXX
Decision Date: 08/31/20 Archive Date: 08/31/20

DOCKET NO. 190926-33461
DATE: August 31, 2020

ORDER

Service connection for bilateral hearing loss is granted.

Service connection for tinnitus is denied.

FINDINGS OF FACT

1. Resolving any reasonable doubt in his favor, the Veteran’s bilateral hearing loss manifested in service, with a continuity of symptomatology after separation. 

2. The Veteran’s tinnitus is not etiologically related to service, and it did not manifest within one year of separation. 

CONCLUSIONS OF LAW

1. The criteria for service connection for bilateral hearing loss have been met. 38 U.S.C. §§ 1110, 1112, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309, 3.385.

2. The criteria for service connection for tinnitus have not been met. 38 U.S.C. §§ 1110, 1112, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309. 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from January 1968 to January 1970. This case comes before the Board of Veterans’ Appeals (Board) on appeal from an August 2019 statement of the case issued by a regional office of the Department of Veterans Affairs (VA). In September 2019, the Veteran opted into the modernized review system, also known as the Appeals Modernization Act (AMA), by requesting Direct Review by a Veterans Law Judge. 

Under the Direct Review option, the Board may only consider the evidence of record at the time of the agency of original jurisdiction (AOJ) decision on appeal. 38 C.F.R. §§ 20.300, 20.301. In this case, the Veteran and his representative submitted additional evidence after the AOJ’s August 2019 decision. See September 2019 statement in support of claim; August 2020 brief (citing Merck Manual entry on tinnitus). 

Although the Board may not consider any additional evidence at this time, the Veteran may file a Supplemental Claim and submit or identify this evidence. 38 C.F.R. § 3.2501. If the evidence is deemed new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision.

Service Connection 

In general, the Veteran attributes his bilateral hearing loss and tinnitus to in-service noise exposure. 

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by military service. 38 U.S.C. §§ 1110; 38 C.F.R. § 3.303(a). Service connection generally requires evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship (“nexus”) between the current disability and the disease or injury incurred or aggravated during service. Walker v. Shinseki, 708 F.3d 1331, 1333 (Fed. Cir. 2013). 

Presumptive service connection may be established for certain chronic diseases, including sensorineural hearing loss and tinnitus, which manifest to a compensable degree within one year of separation from active service, provided the Veteran served continuously for 90 or more days. 38 C.F.R. §§ 3.307, 3.309. When a disease is not shown to be chronic during service or within the one-year presumptive period, service connection may also be established by showing continuity of symptomatology after service. 38 C.F.R. § 3.303(b); Walker, 708 F.3d at 1338. 

Hearing loss disability is defined by VA regulation. Under 38 C.F.R. § 3.385, impaired hearing will be considered a disability when the auditory (Puretone) threshold in any of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz (Hz) is 40 decibels (dB) or greater; when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hz are 26 dB or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 

1. Service connection for bilateral hearing loss

In its August 2019 decision, the AOJ found that the Veteran had a current bilateral hearing loss disability for VA purposes, and that he was exposed to military noise during service. The Board is bound by these favorable findings. 38 C.F.R. § 3.104(c). After careful review, the Board finds that the Veteran’s hearing loss manifested in service, with a continuity of symptomatology after separation. 

Service treatment records shows complaints of bilateral hearing loss prior to separation. In December 1969, he complained of impaired hearing and headaches after rupturing both eardrums in Vietnam. He was referred to an ear, nose and throat specialist, who determined that his hearing was “essentially normal.” A month later, he reported hearing loss and “ear, nose, or throat trouble” during his separation examination. Audiograms taken in January 1968 (preinduction examination), December 1969, and January 1970 (separation examination) all show hearing within normal limits for VA purposes. 

Post-service medical records reflect that the Veteran reportedly started wearing a hearing aid in his left ear in 2010. During an August 2015 VA audiological consultation, he reported longstanding hearing loss, worse in the left ear than the right, as well as a history of noise exposure in service. 

The Veteran received a VA examination in January 2016, and reported that the onset of his hearing problems occurred shortly after returning from Vietnam. The 2016 examiner found that while the December 1969 audiogram indicated some bilateral hearing loss, the separation examination audiogram revealed normal hearing, with thresholds of -10dB for all frequencies tested. According to the examiner, this combination of results suggests that the earlier audiogram “may have been performed soon following a blast/noise exposure or illness with excellent recovery of hearing” afterwards. Indeed, a handwritten note in the margin of the December 1969 audiogram indicates the Veteran reported exposure to range fire two hours before the test. 

The 2016 examiner also found that the Veteran’s current audiometry reflected an assymetry in hearing, which was not evident on any of the in-service audiograms, suggesting that “some part or all” of his hearing loss occurred after service. Ultimately, the examiner concluded the Veteran’s hearing loss was less likely than not related to service. 

The Board finds the 2016 examiner’s opinion inadequate with respect to the Veteran’s hearing loss because the examiner does not appear to have considered the subjective complaints of impaired hearing during service. The opinion likewise does not reflect consideration of the Veteran’s lay statements, including those made during the examination, which suggest continuity of symptomatology after service. See e.g. May 2015 statement in support of claim. By relying only on the in-service audiograms, the examiner improperly discounted relevant lay evidence. Dalton v. Nicholson, 21 Vet. App. 23, 39-40 (2007).

As a layperson, the Veteran is competent to report the onset of his subjective symptoms. Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006). In this case, service treatment records document complaints of hearing loss, even though the audiometric results indicated normal hearing at separation. Subsequent lay statements in the record reflect that his subjective symptoms continued in the years following separation. Overall, the Board finds the Veteran’s subjective account of his hearing loss to be competent, credible, and highly probative. This lay evidence is sufficient to support a finding of continuity of hearing loss symptomatology. Walker, 708 F.3d at 1339 (describing the more relaxed evidentiary standard for establishing service connection for certain chronic diseases). 

Accordingly, resolving any reasonable doubt in the Veteran’s favor, the Board concludes that service connection for bilateral hearing loss is warranted. Gilbert v. Derwinski, 1 Vet. App. 49, 54 (1990). The appeal is granted. 

2. Service connection for tinnitus

As noted above, the AOJ favorably found that the Veteran was exposed to military noise during service. 38 C.F.R. § 3.104(c). The record also contains a current diagnosis for tinnitus. However, because the evidence of record at the time of the August 2019 AOJ decision does not show that his tinnitus is etiologically related to service, or that it manifested within one year of separation, service connection is not warranted. 

Although service treatment records reflect complaints of hearing loss, there is no mention of tinnitus or ringing in the ears in any of the Veteran’s medical records until 2015, more than 45 years after service. See Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000) (a lengthy period without medical complaints for a claimed disability is one factor that weighs against service connection). In August 2015, he reported infrequent left-sided tinnitus during a VA audiological consultation. None of his treatment reports specifically indicate when he began experiencing tinnitus. 

During the January 2016 VA examination, the Veteran reported an onset of tinnitus within the past 4-6 years. He described his symptoms as very intermittent, short-lasting, and worse in the left ear. Based on the separation examination audiogram showing normal hearing, and the Veteran’s own account of his tinnitus onset, the examiner opined that tinnitus was less likely than not related to military noise exposure. The examiner’s rationale is coherent, and it reflects consideration of the relevant lay and medical evidence available at the time. The Board finds this opinion to be highly probative. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). It is also uncontradicted by any competent evidence in the record. 

The Veteran, through his representative, asserts that the 2016 examiner was overly reliant on in-service audiogram results, which may have been recorded in American Standards Association (ASA) units, instead of the now standard International Standards Organization-American National Standards Institute (ISO-ANSI) units. See August 2020 appellate brief. As noted above, the 2016 examiner relied, in part, on the January 1970 separation audiogram to find no nexus between tinnitus and service. The separation audiogram showed values of -10 dB, in both ears, for each frequency between 500 and 4000 Hz, except for 3000 Hz where no values were recorded. 

Because it is unclear which standard was used, the Board has converted these results to ISO-ANSI units by adding 15, 10, 10, 10, and 5 dB, respectively, to each frequency between 500 and 4000 Hz. The converted results are as follows: 

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 5 0 0 / -5 

LEFT 5 0 0 / -5 

Even adjusting for the possible unit discrepancy, the January 1970 audiogram shows normal hearing at separation, just as the 2016 examiner concluded it did. The examiner appropriately considered this data, along with the Veteran’s subjective account of the onset of his tinnitus, in formulating her opinion. 

The Board has considered whether the evidence of record at the time of the August 2019 AOJ decision supports a finding of continuity of symptomatology for tinnitus. While the Veteran’s service treatment records and subsequent lay statements establish that his subjective hearing loss symptoms (i.e., diminished hearing acuity) began prior to separation, that is not the case for his tinnitus. Rather, he told the 2016 examiner that his tinnitus began between 2010 and 2012. The Board finds no other evidence (at the time of the 2019 decision) which suggests an earlier onset. Thus, by his own competent, credible account, the Veteran’s tinnitus manifested at least 40 years after service. 

Although the Veteran contends his hearing loss and tinnitus are “inextricably intertwined,” the record here shows that one disability manifested decades after the other. There is no competent evidence linking the Veteran’s current tinnitus to in-service noise exposure or noise-induced hearing loss. The Veteran himself lacks the medical expertise to make that determination. Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011); see also Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). In sum, the preponderance of evidence is against service connection for tinnitus. As such, the benefit-of-the-doubt rule is not applicable in this instance. Gilbert, 1 Vet. App. at 53. The appeal must be denied.

 

 

KELLI A. KORDICH

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board D.Z. Wall, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.